Judge Nicholas
delivered the Opinion of the Court.
This was an action on the case, in which Brand obtained a verdict and judgment against Bosworth, for the value of a slave killed on Bosworth’s farm, at a negro frolic, or dance. The case, when stated most favorably for the verdict, is, that Bosworth permitted some fifty ne-trolling party surrounded the house about midnight, for the purpose of apprehending the negroes and breaking up the frolic ; that the negroes refused to surrender when called upon so to do, and endeavored to make their escape ; that one of the patrol, without any necessity for so doing, wantonly fired a pistol, loaded with balls and buck shot, into a dark room, crowded with ne-groes, and thereby killed the slave of Brand. groes to assemble and dance at an out-house ; that a pa-
By the eighth section of the act concerning slaves, 2 Dig. 1151, it is declared, “ that if any master, mistress, or overseer of a family, shall knowingly permit or suffer any slave, not belonging to him, or her, to be and remain upon his, or her, plantation above four hours at one time, without leave of the owner or overseer of such slave, he, she or they so permitting, shall forfeit and pay two dollars for every such offence ; and every owner, or overseer, of a plantation, who shall so permit or suffer more than five negroes, or slaves, other than his or her own, to he and remain upon his or her plantation or quarter, at any one time, shall forfeit and pay five shillings, for each negro or slave, above that number which said several forfeitures shall be to the informer, *378 and recoverable, with costs, before any justice of the peace of the county where such offence shall be committed.”
'Whenever an injury results to a party, from the unlawful act or omission of another, the injured party is, in general, entitled to reparation, and may maintain his action against the wrong-doer ;hut the injury must be the direGt and immediate, or at least, the proximate and natural, consequence of the act or omission complained of. ■^-Ánd tho’ an injury may loe traced up to the unlawful act of one man, if it would not have happened but for the subsequent,unlawful act of another, the latter alone is liable.
*378 That this act renders the conduct of Bosworth illegal in permitting the assemblage of the negroes, and that it renders him liable to the penalty ■'therein named, to be recovered in the manner therein prescribed, there is no doubt. 'But that he is liable for every accident or injury happening to the slaves of others whilst so assembled,, or in going to or coming from his farm, is an inference by no means so obviously deducible therefrom. The ■interests of slave owners and the general peace and good order of a community circumstanced like ours, may have required the legislature to prohibit such assemblages of negroes, even for the purposes of innocent- recreation ; but it is difficult to strain the fault of him who permits them, beyond that of a mere malum prohibitum. The’legislative prohibition is accompanied by its own prescribed sanction, and we are not prepared to admit any motives of policy that should induce the general law to apply any additional penalties in aid of that sanction. Bosworth must he responsible, or not, for the value of Brand’s slave, according to the principles of law applicable to all torts. There is nothing in the act quoted, which attaches any such penalty to this particular tort.
It is true‘in the general, that a man is entitled to reparation for every damage he sustains from the unlawful action or omission of another. But the damages must be the direct and immediate, or at least, proximate and natural consequence, of the act or omission complained of. It will not do to carry it to every consequence, however remote, which can be traced to the particular action or omission, and much less to such things as are not a natural consequence, and may have arisen from other and extraneous causes.
Thus, it is said, Buller's Nisi Prius, 25, “ that if one whip my horse, whereby he runs away with me, and runs over a man, he may have an action against such person, for the whipping was an act of folly, and he ought to be answerable for the consequence. A fortiori, *379 Í might maintain an action, if I received any hurt, because the consequence is more natural.” He also suggests the propriety of proving, in such cases, that the injury was such-as would probably follow from the act done. “ So also,” he says, “ if a man lay logs of wood across a highway, whereby my horse stumbles and flings me, I may bring an action ; for whenever a man sustains a particular injury by a nuisance, he may maintain an action ; but then the injury must be direct, and not consequential, as by being delayed in a journey of importance.” For which he cites Carthew, 194, 451.
Pothier, in his treatise on obligations, page 97, says, “ if a man sells me a cow, which he knows to be infected with* a contagious distemper, and conceals it from me, he is responsible for the damage I suffer, not only in that particular cow, but also for. my other cattle. to; which the distemper is communicated.” But, he says, if the loss of his cattle prevented him from raising a crop, which prevented him from paying his debts, and his creditors in consequence seize his property and sell it much below the value, that these consequences being too remote, the fraudulent vendor is responsible for none of them.
Suppose the slave^ of one goes to the farm of another, and is not driven away in the time prescribed by the above cited actthat in consequence, he is overtaken on his return home, by a hurricane, and killed by the falling of timber, or is accidentally shot,.or even whilst.remaining after the prescribed time, he is accidentally killed — could the owner of the slave recover his value from the owner of the farm ?. Or, to take a case under another clause of the statute, that a slave enters a tip-ling house, and purchases a dram, and whilst in the act of drinking it, he is accidentally or designedly shot, by some one from without the house — would the seller of the dram, be responsible for the value of the slave ? It seems to us,, that all these propositions must be answered in the negative, and that the contrary opinion has no plausible foundation in either law or justice:
If in the cases put, or in this case, the slave had been detained against his will, and whilst so detained, had been killed, there would have been more plausibility in *380 asserting such liability. And here, in the not attending {0 tj)e jn,p0rtar,t distinction between the assumption, and non assumption, of illegal control over the slave, lies the fallacy of the argument of the learned counsel j[n favor of the verdict, and exists the want of analogy between this case and ail or most of those to which he attempted to liken it.
If one man takes the horse of another without authority, lie is a tort feasor all the time he detains him, and if the horse be killed whilst in his possession, by however improbable or unexpected a casualty, he is responsible. Not so, however, if the horse had strayed upon his farm, and was there permitted to remain merely-
The true view of the case is, that the permitting the negroes to assemble and remain at the frolic, was not, properly speaking, tiie cause of the death. The cause was the wanton malice of the patrol ; and if that had been produced by drink given by another, that other would have been a much more proximate cause of the death, than either Bosworth or the frolic ; yet we presume no one would contend for the liability of the giver of the drink. If one invites another to dinner, and the guest, whilst on the way or at the dinner, is wantonly killed, it cannot be properly said of the giver of the feast, that he caused his death.
It is illegal to cut a ditch across a public highway, and he who does it, is liable for any special damage another thereby sustains; for instance, if a slave should be killed or maimed by falling into the ditch. But if a slave, whilst merely detained there, is accidentally killed by the going off of a gun or by the wilful malice of another, his death could not properly be ascribed to the digger of the ditch. Yet it would follow that he, and all others similarly circumstanced, would be responsible for the slave, if we were to visit such liability upon Bos-worth.
By a post revolutionary English decision, the setter of a trap in which a dog was killed, was held responsible for the clog, because it was set so near to the ground of the dog’s owner, that the bait could be smelt therefrom, *381 and the clog did blit obey his instinct in following the lure that was set for him. Now, the permittee of a negro frolic is distinguishable from the setter of the trap in two important particulars. A negro is not a mere brute, with an instinct in lieu of reasoning properties, and destitute of rational qualities, to restrain the impulse of bis appetite, nor does the frolic necessarily carry with it such perilous consequence to him, when visited, as did the trap to the dog. But without the aid.of these distinctions, suppose the dog had been accidentally or wilfully killed by some third person, before he reached the trap, would the setter of the trap have then been responsible. Or, to make the cases more completely analogous, suppose (in lien of the trap,) the bait had been merely fastened to a tree, and that, whilst in the act of eating the bait, he had been shot by a third person. How would the case then have gone ? It is impossible to presume the setter of the bait could have been held liable. If not, then that case is conclusive of this ; for it it will be vain to attempt to distinguish them. The same law determines both. It was as illegal to lure the dog, as the negro, from the premises of his owner to those of another.
We will not prolong the discussion, for where a case falls so obviously and widely apart from the rule of principle within which it is attempted to be brought, as this does, it serves little the purposes of illustration to suppose others only equally so. The mind that infers liability in the one, will do it in the others also.
In our opinion, the verdict was without sufficient evidence to sustain it ; and the jury should have been instructed to find for the defendant, as was requested on the trial.
The judgment is reversed, with costs, and the cause remanded, with directions for a new trial, consistent herewith.