Case 31.

ORD. PET.

17m722
89 350
17bm722
113 856
17bm722
131 735

## Patch *vs.* City of Covington.

APPEAL FROM KENTON CIRCUIT.

1. A city corporation is not responsible to the owner of property consumed by fire, on the ground that it failed to keep cisterns filled with water, fierhooks, &c., whereby a fire might have been extinguished.

2. To authorize the recovery of damages for an act of omission or commission, the injury complained of must be the direct, or at least the proximate and natural consequence of the act complained of. It will not do to carry the rule to every consequence however remote, which may be traced to the particular act or omission.

[The facts of the case are stated in the opinion of the court.—REP.]

*Stevenson & Kinkead* for appellant—

1. The general rule which we rely upon as safe to test liability in a case like this is, that where an indictment may be maintained against an individual, or a corporation, for something done, or negligently omitted to be done, which it is a public duty to do, causing damage to the public, an action will lie for special damages thereby done to an individual; as in the ordinary case of a nuisance put in the highway by a stranger digging a trench across it, or by the default of the person to repair, whose duty it was to do so. An action was maintained against the corporation of Lynn Regis, for not repairing a creek, as from time immorial they had been used. (*Mayor of Lynn vs. Turner, Cowp.*, 85.) In that case the liability of the corporation was by prescription; it was perhaps a condition of their charter. The principle was fully discussed in the case of *Henly vs. The Mayor of Lynn Regis, first in the common pleas*, 1 *Brig.*, 1; *secondly in the King's Bench*, 3 *Barn. & Adolphus*, 77, *and lastly in the House of Lords*, 1 *Brig. N. C.*, 222.) It being admitted that if the liability was by prescription, that the corporation was indict-

able. It was shown that if the origin of the liability was legal, it was unimportant when it took place; that when the King, for the benefit of the public, has made a certain grant, imposing certain public duties, and that grant has been accepted, the public may enforce the performance of those duties by indictment, and individuals peculiarly injured may have a remedy by action. This doctrine has been approved by American courts.

A political corporation is not exempt from any of the responsibilities of a private corporation, or an individual, except when engaged strictly in the exercise of the power of sovereignty. (*Bank U. S. vs. Planters' Bank of Georgia*, 9 *Wheat.*, 904; *Clark vs. Mayor of Washington*, 12 *Ib.*, 40; *Goodloe vs. City of Cincinnati*, 4 *Hammond*, 500; *Smith vs. City Cin.*, *Ib.* 514; *Martin vs. City New York*, 545; *Ross vs. City Madison*, 1 *Smith*, 98; *Mayor of Memphis vs. Lasser*, 9 *Humphrey*, 557; *Bayley vs. Mayor New York*, 3 *Hill*, 538; *Mayor of New York vs. Furze*, *Ib.* 612.)

This court has recognized the liability of a corporation for the consequences of an act which it authorizes to be done prejudicial to individual right, (*Prather vs. City of Lexington*, 13 *B. Monroe*, 560,) though in the same case it is decided that the corporation is not liable for the unauthorized and unlawful acts of its officers. The same doctrine is reaffirmed in the case of *Ward vs. City of Louisville*, 16 *B. Mon.* 193, where it is said that a municipal corporation is not responsible for injuries perpetrated by a mob within its territorial limits.

The ground of this action is the willful neglect of the city, of duties imposed by law upon it as a corporation—which it had undertaken to perform—and had been so inefficiently performed that injury resulted to the plaintiff. All the allegations of the petition are to be taken as true upon the demurrer. The duty of constructing and keeping these cisterns in repair is therefore conceded to be a corporate duty, for the neglect of which the corporation is clear-

PATCH
vs.
COVINGTON.

ly liable. It is admitted, also, that the corporate authorities knew that these cisterns were out of repair, and would not hold water, and that in consequence thereof the plaintiff's house was burned. The duty required here was a corporate duty, and the neglect of that duty has resulted in injury to the plaintiff. The right to construct these cisterns was conferred for private benefit, though the public derives a benefit also. It stands upon the same footing as would an individual or body of persons on whom the like special franchise had been conferred. (3 *Hill*, 537.)

It is said that the words of the act of incorporation, as to cisterns, are permissive—not imperative. This objection is fully answered by the argument of Judge Nelson, in the case of the *Mayor of City of New York vs. Furze*, 3 *Hill*, 614. The Judge said that the act, though *permissive*, might be regarded, upon well settled principles of construction, as *imperative*, being one of public concern, and exclusively to the public welfare; in such cases the exercise of the power becomes a duty. In the case of *The King vs. The inhabitants of Derby, Skinner*, 370, a motion was made to quash the indictment against the inhabitants for refusing to meet and make a rate to pay the constable's tax. The ground taken for the motion was that the statute was not imperative, but merely said *they may meet*. The court said *may*, in a case of a public officer, is tantamount *to shall*, and if he does not do his duty he shall be punished.

But it is said the injury complained of is too remote. The court is referred to the following authorities, as sustaining the plaintiff's claim to compensation for the injury complained of: *Baker vs. Moore*, 1 *Lord Raymond*, 491; *Rose vs. Miles*, 4 *Maule & Selwyn*, 101; *Maynell vs. Saltmarsh, 1 Kib.*, 847; 19 *Pick.* 156.

It was supposed by the circuit court that there was damage without injury. But where there is an in-

fringement of a right the law will presume some injury. (*Barker vs. Green*, 2 *Bing.*, 317.)

There may be cases in which, in law, an act may be an injury, and may produce damage to an individual, and yet the law afford no immediate remedy. There are cases in which the act done may be a grievance to an entire community, no one of whom is injured more than another in the *kind* of injury, though one may be in *degree* injured more than another. (*Smith vs. City of Boston*, 7 *Cushing*, 254.) In such cases the mode of punishment is by indictment only; still, if any other person has sustained a particular damage therefrom, beyond that of his fellow-citizens, he may maintain an action for that particular damage. (*Smith's Leading Cases*, 1st vol., 365.)

So, there are acts from which damage may result, but which is not punishable because the damage incurred is, to use a legal phrase, too remote to be the subject of an action, or in other words, it is too remote, and is not the natural consequence of the act done. (*Kelly vs. Partington*, 5 *Barn. & Adolp.* 645; *Lead. Cases*, *vol*, 1, 367.) And it has been thought that damage is always too remote when it proceeds from the act of a third person, though illegal, for that the law will not esteem it natural that an illegal act should be induced by any consideration. Thus, if A falsely assert that B has spoken in disparagement of C, in consequence of which C ceased to invite B, an action would be maintainable. (*Moore vs. Mugh*, 1 *Taunt.*, 39.) But if C were, in consequence, to beat B, no action could be maintained against him by A for such damage.

But where nothing but mischief can be expected to result from the acts of a party, and where the act is performed in virtue of a *quasi* public duty, and is not in virtue of a contract solely, the injury is not too remote, because separated from the unlawful act by intervening persons or events. (*Thomas vs. Winchester*, 2 *Seldon*, 406; *Lynch vs. Murden*, 1 *Adolph. & Ellis*; *Ellidge vs. Goodwin*, 5 *Carr. & Payne*, 190;

*Smith's Leading Cases,* 1 *vol.,* 367; *Ruddell vs. Proprietors of Locks and Canals,* 7 *Mass. Reports,* 147.) The principle settled in these cases is, that where the injury occurs directly or consequently from the willful neglect of a corporate duty, an action is clearly maintainable by a party especially injured, irrespective of the parties or events that intervene.

It is insisted that the allegations of the petition being all taken as true, as they must upon demurrer, a cause of action is made out, and the court erred in sustaining the demurrer.

*Menzies & Pryor* for appellee—

A demurrer to the petition was sustained, and a judgment for the defendant—the appellee—was rendered. The objection to the opinion of the court in deciding in favor of the demurrer presents the only question in this case.

Patch was the owner of a house in the city, which was burned down. The city, by authority of its charter, organized a fire department. The cistern near Patch's house was out of order, and the hose was in a bad condition. On these accounts the firemen were unable to extinguish the fire. The city knew of these defects in the hose and cistern.

Many books were read by Patch in the circuit court, but none of these authorities are based upon a state of facts analogous to the facts of the case in hand. The authorities uphold an action where the injury was the result of negligence—such as the neglect of the city of New York to keep a sea wall in repair, in consequence of which negligence the water from the sea flowed into the yards and cellars of the adjacent occupants; or where the city had raised a street and opened a sewer for the passage of the water, but carelessly made the sewer so small that in a heavy rain the water could not pass off, but was forced back into the houses; or where a ditch is allowed to remain in a street, and a person falling into it is injured; or where the top of a street-cistern

was left open, and a man falling into it got his leg broken. In this class of cases it is admitted that a city is liable; the injury is the direct result of the careless act, and it is right and proper that cities, like private individuals, should be held liable in such cases. But if we go beyond this line, and attempt to hold the city, or the individual liable, we find no defined stopping point, and no authority in the books or in reason for overstepping this ancient and well defined boundary.

Whenever the injury is the effect of a cause which is not the act or omission of the party sought to be charged, there is no liability upon such party. In the case in hand, neither the want of water in the cistern, nor the defect in the hose, set the house on fire. This was the act of an incendiary, or the fire might have been caused by the negligence of the owner, or of some of his near neighbors, in leaving fire in an improper place.

If what is contended for in this case be the rule, the city of Covington would be bound for any and all injuries done within her limits, if her agents could possibly have prevented such injuries, or were bound to make an effort to prevent them, if notified that they were about to be done. If A's house is robbed whilst the watchman sleeps on his post; if B is assaulted when the police might have prevented it; or if the firemen fail to be ready to extinguish the fire which destroys C's house, the city would be liable, and would consequently soon be bankrupt and no city at all. No man could afford to pay the taxes necessary to keep up a city under this rule asserted by Patch.

The damages in this case, if any accrued from the causes alledged, are too remote, and it is too uncertain as to the result of the fire, even if the cistern had been filled with water, to hold the city liable, and a court and jury could never act with a sufficient degree of certainty.

PATCH
vs.
COVINGTON.

The charter does not require the city to keep up a fire department, and the effort made to have fire companies in a condition to do service did not set Patch's house on fire.

In support of our position we refer to *Bosworth vs. Brand*, 1 *Dana*, 337, and we insist that a city should not be held bound under circumstances which would not hold an individual liable. We refer to the case of *Prather vs. The City of Lexington*, 13 *B. Monroe*, 561 and *Ward vs. The City of Louisville*, 16 *B. Monroe*, 193.

January 27.

Judge DUVALL delivered the opinion of the court:

1. A city corporation is not responsible to the owner of property consumed by fire, on the ground that it failed to keep cisterns filled with water, fire-hooks, &c., whereby a fire might have been extinguished.

This is an action brought by the appellant against the city of Covington, to recover the value of a house which, it is alledged, was destroyed by fire in consequence of the failure, on the part of the city, to keep its public cisterns in repair, and to provide the fire company of the city with hooks, ladders, and other necessary apparatus.

The circuit court sustained a demurrer to the petition, and from that judgment the plaintiff has appealed.

This court has recognized the doctrine, that where a particular act, operating injuriously to an individual, is authorized by a municipal corporation, by a delegation of power, either general or special, it will be liable for the injury in its corporate capacity, where the acts done would warrant a like action against an individual; that cities are responsible to the same extent, and in the same manner, as natural persons, for injuries occasioned by the negligence or unskillfulness of their agents in the construction of works for their benefit; and that where a city corporation is bound to keep the streets and sewers of the city in proper repair, it is liable to damages if any person be injured by its neglect to have such repairs made. (*Prather vs. City of Lexington*, 13 *B. Monroe*, 561, *and the cases there cited*.)

Hence it follows that where, as in the case cited by counsel for appellant, of *Henly vs. Mayor of Lynn Re-*

*gis*, the city neglected to keep a sea-wall in repair, in consequence of which the grounds of the plaintiff were inundated; or where a ditch is allowed to remain open in a street, and a person is injured by falling into it; or where a sewer is, by the negligence of the city, made so small that in a heavy rain the water could not pass off, but was forced back into the houses of the inhabitants; in all such cases the liability of the corporation is undeniable, and rests upon the same principles that would determine the liability of a private person.

This principle, as stated by Greenleaf, is that "the damage to be recovered must always be the *natural and proximate consequence* of the act complained of. This rule is laid down in regard to special damages, but it applies to all damage. Thus, where the defendant had libeled a performer at a place of public entertainment, in consequence of which she refused to sing, and the plaintiff alledged that by reason thereof the receipts of his house were diminished, this consequence was held too remote to furnish ground for a claim of damage." (*Greenleaf on Evidence, section* 256.)

"But it is far easier," says Sedgwick in his *Treatise on the Measure of Damages*, "to lay down a general proposition than to apply it to a particular case. When we come to analyze causes and effects, and undertake to decide what is the natural result of a given act, and what is to be regarded as unnatural, what is proximate and what remote, we shall find ourselves involved in serious difficulty. Many things are perfectly natural, and yet very remote consequences of a particular act; many other results are proximate, nay, immediate, and yet so little to be expected that they can scarcely be pronounced natural. Nor does the requirement that the damage be both natural and proximate relieve us from the difficulty. The rule is not much more definite when it is said that the damages must be the *legal and natural* consequence of the act complained of. As in a case in

which the defendant had slandered the plaintiff, who was employed by one J. O. as a journeyman, for a year, at certain wages, by saying that he had cut certain flocking cord, and the plaintiff claimed special damage for his discharge by J. O. in consequence of the slander, before the expiration of the year; it was held by Lord Ellenborough that the discharge of the plaintiff by J. O. was a mere wrongful act, and not 'the *legal* and natural consequence of the slander complained of.'" (*Sedgwick on Damages, chapter* 3.)

The learned author has collected a great number of cases on this subject—English and American—in all of which the courts profess to recognize and adhere to the rule stated, though the decisions exhibit some want of uniformity, resulting chiefly, however, from the different classes of cases to which it has been applied. In actions of tort, for instance, it has been held, even where vindictive damages cannot be demanded, that the degree of fault will govern not only the question of liability but the amount of remuneration; and accordingly as the act is more or less morally wrong, so the courts will make the guilty party responsible for the consequence, more or less remote, of his conduct. The effect of this, says Sedgwick, will be to introduce into the subject of wrongs the most perplexing distinctions; the tribunal will, in each case, have to decide not only a legal but a moral question, and to determine, moreover, the amount of consequences for which a given amount of immorality or negligence is to be made answerable. And he concludes his able review of all these decisions by saying, that "it would be better, in all matters of tort, where the wrong is not so flagrant as to warrant vindictive damages, to adhere as closely as possible to a fixed rule; to declare that in *no case* shall the measure of relief depend on the motive of the party, and that the remuneration is, in all cases, to be limited to the *natural and proximate* consequences of the act."

The rule as thus laid down has been strictly adhered to by this court in all cases in which similar questions have arisen. In the case of *Bosworth vs. Brand*, 1 *Dana*, 377, the defendant had permitted about fifty slaves to assemble and dance in an out-house on his place; about midnight a patroling party surrounded the house for the purpose of apprehending the negroes and breaking up the frolic; that the negroes refused to surrender when called upon, and endeavored to make their escape; that one of the patrol, without any necessity for so doing, wantonly fired a pistol into a dark room, crowded with negroes, and thereby killed the slave of Brand. The conduct of Bosworth, in permitting this assemblage of slaves, was illegal, being contrary to the express provisions of the statute, and under which he was liable to an indictment. It was therefore contended, that inasmuch as Bosworth's illegal act was the cause of the slave's death, he was liable to the owner, in damages, for his value. But the court held "that it is, in general, true · that a man is entitled to reparation for every damage he sustains from the unlawful action or omission of another. But the damages must be the direct and immediate, or at least the proximate and natural consequence of the act or omission complained of. It will not do to carry it to every consequence, however remote, which can be traced to the particular action or omission, and much less to such things as are not a natural consequence, and may have arisen from other and extraneous causes." "The true view of the case is, that the permitting the negroes to assemble and remain at the frolic was not, properly speaking, the cause of the death. The cause was the wanton malice of the patrol; and if that had been produced by drink given by another, that other would have been a much more proximate cause of the death than either Bosworth or the frolic, yet we presume no one would contend for the liability of the giver of the drink."

The same doctrine has been held in numerous other and more recent adjudications of this court. (*King vs. Shanks, and cases there cited*, 12 *B. Monroe*, 420.)

Do the facts set forth by the appellant in the case now before us, make out a cause of action within the rule or principle we have been considering?

He alledges that the fire by which his house was destroyed, originated in a small frame building adjacent to his own; that the firemen had reached his house before the flames had communicated to it, and would have been, as he is informed, believes, and charges, able to save it, but that in consequence of the failure and neglect of the city council to keep in repair the public cisterns in the vicinity, there was not sufficient water with which to extinguish the flames, and his building was therefore destroyed; that there were three public cisterns in the vicinity, but neither was in a condition to hold much, if any water, owing to the neglect of the city authorities, whose duty it was to keep them in repair; that they had undertaken to do this, taxing the appellant and other citizens for that purpose, and that they were notified that the cisterns required repairing; that the city had organized a fire department at considerable cost to the inhabitants, but had failed to provide the necessary hooks and ladders for its use, in consequence of which the firemen had been unable to pull down the adjacent frame building before the fire reached his house; that in consequence of this two-fold negligence, his house, which was worth $5000, was consumed, and he therefore prays judgment for that sum.

It is not charged that the fire was the consequence, remote or proximate, of any act or omission on the part of the city. The legal import of the allegation is that the plaintiff's house was set on fire by the frame; that the destruction of his property which resulted from this cause would, in the opinion of plaintiff, have been averted by the firemen, if the cisterns had not been out of repair through the negligence

2. To authorize the recovery of damages for an act of omission or commission, the injury complained of must be the direct, or at least the proximate and natural con-

of the city. It is obvious, therefore, that the *cause* which produced this effect was wholly disconnected from and independent of the city, or of its acts or omissions. There was neither proximity in the order of the events, nor the relation of cause and effect between the negligent omission complained of, and the results which followed. As, in the case of *Bosworth vs. Brand, supra,* the illegal act of Bosworth would have been followed by no injurious consequences, but for the intervention of the real and immediate cause of the slave's death—the malicious shooting by the patrol; so here, the alledged negligence of the city council could not have occasioned the destruction of the appellant's house, but for the intervention, in like manner, of the more immediate, and, therefore, real cause—the burning of the adjacent building. If the cisterns had been full of water, and the city council had negligently and knowingly left them open or uncovered, in consequence of which the slave of the appellant had fallen in and drowned, their liability would have been unquestionable, upon the principle referred to, because then the damage would obviously have been the natural and proximate consequence of the negligence.

Upon the same principle, if the council had negligently permitted a ditch to remain open in the street, whereby the plaintiff's servant, in attempting to cross it, was killed or maimed, he could recover against them to the extent of the injury. But suppose the plaintiff's servant is suddenly attacked with a dangerous malady requiring the immediate aid of a physician; that one is sent for, who could have reached his patient in time to save him, but was prevented by falling into the ditch thus negligently left open, whereby he was wounded and was unable to proceed further, in consequence of which the slave died; or, as in the case put by this court in *Bosworth vs. Brand,* suppose the slave of one goes to the farm of another, and is not driven away in the time prescribed by the statute, and in conse-

sequence of the act complained of. It will not do to carry the rule to every consequence however remote which may be traced to the particular act or omission.

quence, the slave is overtaken on his return home by a hurricane, and killed by the falling of the timber, will it be pretended that in either case, the owner of the slave could recover his value? And yet they come within the principle which the counsel for the appellant insists is established by the numerous cases cited in his elaborate and able argument, namely: "That whenever injury occurs, directly or consequently, from the willful neglect of corporate duty, an action is clearly maintainable by a party especially injured, *irrespective of the events or parties that intervene.*" Under this extension of the doctrine every consequence of a given act or omission, however remote and unnatural, may become the foundation of a right of action, either against a corporation or an individual. No such comprehensive rule is deducible from the authorities when examined with reference to the facts involved and the points decided. Indeed the utter impracticability of applying such a rule is a sufficient argument against its existence.

Upon a careful examination of all the authorities within our reach, in which this perplexing question has been discussed, we conclude that the only reasonable principle to be deduced from them all is that to which we referred in the outset: that the damage to be recovered must be the natural and proximate consequence of the act or omission complained of; that the petition in this case, giving to every allegation of *fact* the effect to which it is entitled, on demurrer, fails to show a cause of action, and that the demurrer was, therefore, properly sustained. We have arrived at this conclusion, not without some hesitation, arising chiefly from the difficulty of determining, from the multitude of adjudged cases, the precise relation, as defined by the terms, *natural* and *proximate*, which should exist between the illegal act or omission, and the resulting damage, in order to entitle the injured party to redress.

The judgment is affirmed.