CASE 73.—ACTION   BY   LANHAM   LUMBER   COMPANY
AGAINST THE LEBANON, LOUISVILLE & LEXING-
TON TELEPHONE CO. AND ANOTHER.—January 29.

# Lebanon, Louisville & Lex. Tel. Co. v. Lanham Lumber Co.

Appeal from Marion Circuit Court.

I. H. THURMAN, Circuit Judge.

Judgment for plaintiff. Defendants appeal.—Re-
versed.

Telegraphs and Telephones—Delay—Negligence of Operator—
Action for Damages — Pleading — Complaint — Sufficiency.—
Plaintiff alleged that a fire started in the boiler house at its
plant, that on discovering the fire its watchman endeavored
to obtain telephone connection with the fire department, but
that through the negligence of defendant telephone company's
operator no connection was established until the fire had
spread to the other buildings, so that the efforts of the de-
partment after arriving were fruitless, and that the plant
was wholly destroyed, that if connection had been promptly
established the fire alarm would have been given, and the

Lebanon, Louisville & Lex. Tel. Co. v. Lanham Lumber Co.

fire company would have reached the fire at least 30 minutes sooner than they aid, and before the fire had extended beyond the boiler house, and that the fire would in such event have been extinguished with no loss to plaintiff save a trifling damage to the boiler house. Held, that the petition failed to state a cause of action; the facts on which a recovery was sought being too speculative and remote.

FAIRLEIGH, STRAUS & FAIRLEIGH for appellants.

HENRY S. McELROY of counsel.

POINTS AND AUTHORITIES.

The demurrer to the petition should have been sustained:

1. The alleged failure of appellants to effect telephone connection between the nightwatchman of appellee and the fire department was not the proximate cause of the loss. (1 Cooley on Torts, pp. 127 128, and notes; Bacon v. Pullman Co., 159 Fed. 4; Wharton—Law of Negligence, secs. 73-77; Christianson v. Chicago, &c., Ry. Co., 67 Minn. 94; 69 N. W. 640; Black's Law and Practice, sec. 103; Looney v. Metropolitan R. Co., 200 U. S. 480; United States v. Ross 92 U. S. 281; Smith v. Western Union Tel. Co., 83 Ky. 104; Louisville Gas. Co. v. Kaufman, Straus & Co., 105 Ky. 131; Franke v. Head, &c., 19 Ky. Law Rep. 1128; Foster v. Chicago & Lookout Water Co., 3 Lea (Tenn.) 42; Bosch v. Burlington & Missouri Ry. Co., 44 Iowa 202, 24 Am. Rep. 754; Hazel v. City of Owensboro, 30 Ky. Law Rep. 627; Bosworth v. Brand, 1 Dana 377; Patch v. City of Covington, 17 B. Monroe 722; Smitha v. Gentry, &c., 20 Ky. Law Rep 171; 1 Cooley—Torts (3d Ed.) p. 99; 1 Works of James Wilson (Andrews Ed.), p. 509, The Philosophy of Evidence; Cases distinguished—Metallic Compression Casting Co. v. Pittsburg, &c., Ry. Co., 109 Mass. 277, 12 Am. Rep. 689; Little Rock Traction Co. v. McCaskill (Ark.) 86 S. W. 997; Kiernan v. Metropolitan Construction Co. (Mass.) 49 N. E. 648; Mott v. Hudson River Ry. Co., 1 Robertson (N. Y.) 585.)

2. Assuming the nightwatchman did endeavor to call the fire department, nevertheless his admitted actions constitute such negligence as to estop appellee claiming a recovery. (Comth. v. Pierce, 138 Mass. 165, 52 Am. Rep. 264; Blyth v. Birmingham Water Works Co., 11 Exchequer 781; Dolfinger & Co. v. Fishback, 12 Bush (75 Ky.) 479; Western Union Telegraph Co. v. Matthews, 113 Ky. 188; Hogle v. New York Central, &c., R. R. Co., 28 Hun.

(N. Y.) 363; Loker v. Damon, 17 Pick. (Mass.) 284; Wiley v. West Jersey R. R. Co., 44 N. J. L. 247.)

3. If in any wise the case can be considered as ex contractu, then we submit that the trial court erred in sustaining a demurrer to the amended answer of appellants. (Cumberland Telephone & Telegraph Co. v. Hendon, 114 Ky. 501; Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N. E. 503, 12 L. R. A. (N. S.) 924 and notes; Phenix Insurance Co. v. Chadbourne, 31 Fed. 300; Deming & Company v. Merchants' Cotton-Press, &c., Co., 90 Tenn. 306, 13 L. R. A. 518; Lancaster Mills Co. v. Merchants' Cotton-Press, &c., Co., 5 Pickle (Tenn.) 1; L. & N. R. R. Co. v. Carothers, 23 Ky. Law Rep. 1673.)

THE EVIDENCE CONSIDERED.

1. There was no contract on the part of appellants to furnish appellee, or any one, with a fire alarm system.

2. Assuming the nightwatchman did endeavor to call the fire department, nevertheless, his admitted actions constitute such negligence as to bar a recovery.

3. The managing officers of appellee were guilty of negligence on their part in failing to provide fire protection for their own benefit. (McNally v. Colwell, 91 Mich. 527, 2 N. W. 70, 30 Am. St. Rep. 494.)

4. The alleged failure of appellants to effect connection between the nightwatchman and the fire department was not the primate cause of the loss.

(a) In respect to the fire, the subject was not one which necessitated expert opinion to arrive at the truth. (McNally v. Colwell, 91 Mich. 527, 2 N. W. 70, 30 Am. St. Rep. 494; White v. Ballou, 8 Allen (Mass.) 408; Atchison, T. & S. F. R. R. Co. v. Lawler, 40 Neb. 356, 58 N. W. ; 8; Gibson v. Hatchett, 24 Ala. 201; State v. Watson, 65 Me. 74; Koccis v. State, 50 N. J. L. 44, 27 Atl. 800.)

(b) Even if the opinions of experts were admissible, the hypothetical questions were not properly founded, because they were not based on an identity of conditions. (Smith v. Western Union Tel. Co., 83 Ky. 104; Looney v. Metropolitan Ry. Co., 200 U. S. 480; United States v. Ross, 92 U. S. 281.)

5. The amount of property burned being based upon a mere estimate, and the criterion of damages being false, there was, therefore, no recoverable damages proved.

H. W. RIVES, D. H. SMITH and S. T. SPAULDING for appellee.

Lebanon, Louisville & Lex. Tel. Co. v. Lanham Lumber Co.

## POINTS AND AUTHORITIES CITED.

1. The modern telephone is a development of the electric telegraph. Both are common carriers of intelligence, of language, the medium of communication between men. One fails in its duty of transmission by withholding the written message offered; the other by failing to give the connection demanded; in each case the breach of duty is of the same character, and the liability the same for any special injury resulting. (Atty. Gen'l v. Edison Tel. Co., L. R. 6 Q. B. D. 244; Wisconsin Tel. Co. v. City of Oshkosh, 62 Wis. 36; Ches. & Pot. Tel. Co. v. B. & O. Tel. Co., 66 Md. 399, 59 Am. Rep. 167, and note, 172; State v. Neb. Tel. Co., 17 Neb. 126, 52 Am. Rep. 404; Cumberland Tel. & Tel. Co. v. Hendon, 114 Ky. 501, 71 S. W. 435, 102 Am. St. 290; Cumberland Tel. & Tel. Co. v. Atherton, 91 S. W. 257; Robinson v. Western U. Tel. Co., 68 S. W. 656.)

2. For a willful failure to transmit a message, a telephone and telegrap' company are liable to the same penalty; and they have the same protection against injury to their property. (Constitution of Kentucky, sec. 199; Ky. Stats. secs. 1231, 1346.)

3. It is not necessary that either a telegraph or telephone company have knowledge of the meaning or importance of the message to be transmitted in order to hold it liable for injury resulting from a negligent failure to transmit it. (Daugherty v. Am. U. Tel. Co., 75 Ala. 168, 51 Am. Rep. 435; W. U. Tel. Co. v. Way, 83 Ala. 542; W. U. Tel. Co. v. Hyer, 22 Fla. 637, 1 Am. St. Rep. 222; W. U. Tel. Co. v. Blanchard, 68 Ga. 299, 45 Am. Rep. 480; W. U. Tel. Co. v. atman, 73 Ga. 285, 54 Am. Rep. 877; W. U. Tel. Co. v. Reynolds, 77 Va. 173, 46 Am. Rep. 715; Cumberland Tel. & Tel. Co. v. Hendon, 114 Ky. 501, 71 S. W. 435, 102 Am. St. Rep. 290.)

4. For a negligent breach of duty in the transmission of a message, a telephone or telegraph company is liable to the party injured for all the direct damages which both parties would have contemplated as likely to follow the breach, if they had bestowed proper attention upon the subject, and had been fully informed of the facts. (See cases cited under point No. 3.)

5. Proximate cause means closeness of casual relation, not nearness in time or distance. Nor is the casual relation broken by the intervention, or co-operation of a series of causes and effects, if all the intervening, or cooperating causes are such as might reasonably have been contemplated as probable and natural, even though some of them may be human agencies innocent of any breach of duty, or of an illegal act. The proximate cause is the efficient cause, the one that sets others in motion  (Insur-

Lebanon, Louisville & Lex. Tel. Co. v. Lanham Lumber Co.

ance Co. v. Boon, 95 U. S. 117; East Tenn., &c., R. R. Co. v.
Hesters, 79 Ala. 315; Smethurst v. Cong. Church, 148 Mass. 261,
12 Am. St. Rep. 550; West v. Ward, 77 Iowa 323, 14 Am. St. Rep.
284; Louisville, &c., Ry. Co. v. Wood, 113 Ind. 544; Haverly v.
State Line, &c., R. R. Co., 135 Pa. St. 50, 20 Am. St. Rep. 848;
Pullman Pal. Car Co. v. Laack, 143 Ill. 242; Del., &c., R. R. Co. v
Salmon, 39 N. J. L. 299, 23 Am. Rep. 214; Insurance Co. v. Tweed,
7 Wall·52; Cinn., &c., R. R. Co. v. Barker (Ky.) Feb. 16, 1893;
Metallic Compression Casting Co. v. Fitchburg, R. R. Co., 109
Mass. 277, 12 Am. Rep. 689; Shinkle v. City of Covington, 1 Bush
618; Shelbyville Water & Light Co. v. McDade (Ky.) 92 S. W.
568.)

6. One guilty of a wrongful or negligent act must be presumed
to have known, not only the fixed laws of inorganic matter, but
the impulses, instincts, feelings and emotions of animals, includ-
ing human beings, the are likely to induce a certain kind of con-
duct if worked upon in a certain manner; and he will be held
responsible for the action of such animate or inanimate inter-
vening agencies, set in motion by him, when they do what was
probable they would do. (Hayes v. Hyde Park, 153 Mass. 514;
Quigley v. Del. Canal, 142 Pa. St. 388, 24 Am. St. Rep. 504; Weick
v. Lander, 75 Ill. 93; Binford v. Johnston, 82 Ind. 426, 42 Am.
Rep. 508; Storer v. Bluehill, 439; State v. Rankin, 3 S. C. 438,
16 Am. St. 737; Hughes v. McDonough, 43 N. J. L. 459, 39 Am.
Rep. 603; McDonald v. Snelling, 14 Allen 292, 92 Am. Dec. 768;
Powell v. Deveny, 3 Cush. 300, 50 Am. Dec. 738; Mahogany v.
Ward, 16 R. I, 479, 27 Am. St. Rep. 753; Congreve v. Morgan, 18
N. Y. 84, 72 Am. Dec. 495; Clark v. Chambers, L. R. 3 Q. B. D.
327; Wharton on Negligence, 138-141; Thompson on Negligence,
1089.)

7. Common carriers of intelligence have, uniformly, been held
liable for damages resulting from negligent failure to transmit
or deliver messages; including loss of profits on sales, expense
of unnecessary journeys, loss of weight on live stock, loss of
wages from failure to secure employment, and loss of fees that
would have been earned by professional men.   (W. U. Tel. Co.
v. Cooper, 10 Am. St. Rep. 782-788 (Note by Judge Freeman);
Barker v. W. U. Tel. Co. (Wis.) 114 N. W. 539, 14 L. R. A. (N. S.)
533.)

8. A defendant whose negligent act prevents fire hose being
brought to the scene of a fire or renders it useless after it is
brought; or on whose negligent act prevents an adequate supply
of water, or the use of the appliances by which alone it can be
utilized, is guilty of a breach of duty toward the owner of the
property, and is responsible for the property burned, that would

probably have been saved but for his breach of duty. (Metallic Compression Casting Co. v. Fitchburg R. R. Co., 109 Mass. 277, 12 Am. Rep. 689; Atkinson v. New Castle & Gateshead Water Works Co., L. R. 6 Exch. 404; Shelbyville Water & Light Co. v. McDade, 92 S. W. 568.)

9. The burden of proof, on the defense of contributory negligence, is upon the defendant, and plaintiff need not aver, in his pleadings, its absence. (Board of Councilmen of Frankfort v. Chinn, 89 S. W. 188.)

10. Contributory negligence, in order to defeat a recovery, must have contributed to the injury to such an extent, that, but for it, the injury would not have resulted. South Cov. & Cinn. St. Ry. Co. . Nelson, 89 S. W. 200; and where there is any evidence of negligence, the question is for the jury. (Ill. Cent. Ry. Co. v. Proctor, 89 S. W. 714.)

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

The Lanham Lumber Company, a corporation, is engaged in the manufacturing of hardwood flooring, etc., at Lebanon, Ky. On the night of July 4, 1907, at some time after midnight, a fire started in the boiler room at its plant and spread from there to the main building, a few feet away, and in a comparatively short time they were all destroyed, except one warehouse. The origin of the fire is unknown. The Lebanon, Louisville & Lexington Telephone Company is a Kentucky corporation with its principal place of business at Lebanon, where it is engaged in operating a telephone system. The Cumberland Telephone & Telegraph Company is also a Kentucky corporation, doing a general telephone business throughout Kentucky, and especially in Marion county, where it connects with the Lebanon, Louisville & Lexington Company's telephone system, and furnishes the connection for the last named company with other points in Kentucky and elsewhere. It appears that the Cumberland Telephone & Telegraph Company now owns the Leba-

non, Louisville & Lexington Company, though the corporate existence of the latter is still kept up. At the date of the fire, and for some years before, the Lebanon, Louisville & Lexington Telephone Company was furnishing the said Lanham Lumber Company with telephone service. Shortly after the fire the Lanham Lumber Company brought suit against both telephone companies to recover $22,000, the damages which it alleged it had sustained by reason of the fire. It was charged in the petition: That the loss was due to the negligence of the defendant companies in failing to promptly effect the telephone connection between the night watchman on their premises and the local fire engine house in Lebanon; that when their said night watchman discovered the boiler house to be on fire, he at once rang Central for the purpose of telephoning the alarm to the engine house; that the central office failed to answer his call, and that it was only after he had made repeated efforts, during an interval covering some 20 or 30 minutes, that he succeeded in getting Central to answer and furnish the needed connection. In the meantime the fire had gained such headway that when the fire department reached the scene it was beyond control, and the buildings and their contents were totally destroyed.

Each company filed a demurrer to the petition, and also filed a motion that plaintiff be required to furnish a list of the property contained in the building. This latter motion was sustained, and plaintiff filed a list of the property lost in the fire. The demurrers were overruled. Each company then answered, traversing the allegations of the petition in so far as it sought to charge them with negligence, and pleaded affirmatively that plaintiff's loss was due to the negligence of its night watchman, and that this failure to

promptly give the fire alarm was the proximate cause of the company's loss. Thereafter the defendant companies filed an amended answer, in which they charged that the plaintiff had the buildings and contents, which were destroyed by fire, fully insured, that the insurance company had paid the insurance, and that by reason thereof plaintiff had sustained no loss at all. A demurrer was sustained to this amended answer. Plaintiff replied, traversing the second paragraph of the answer, which completed the issues. Upon the issues thus joined a trial was had which resulted in a hung jury. A second trial resulted in a verdict for $10,000 in favor of plaintiff, against both companies. Motions for a judgment notwithstanding the verdict and a new trial were in turn overruled, and the defendants appeal.

Several grounds are relied upon for reversal, chief of which is that the court erred in overruling the demurrers to the petition. After setting out at some length a description of the buildings burned, for which a recovery is sought, and the fact that plaintiff is a subscriber to defendants' telephone, service, and that telephones are maintained in the offices of the city officials, the state of facts, upon which plaintiff seeks to hold defendants liable, is pleaded as follows: "On July 5, 1907, the night watchman of plaintiff, in due performance of his duties, discovered that the boiler house at plaintiff's manufactory was on fire, but that if the fire company could be promptly summoned the fire would be arrested before it could reach and burn the mill and other buildings, which were close to, but disconnected from, the said boiler house. The said night watchman immediately, at about 15 minutes after 2 o'clock a. m., went to plaintiff's telephone, which was in good working order and

duly connected with the exchange, and thereupon rang the bell and tried in the usual manner to call defendant's operator at the exchange, in order to be connected with the telephone at the city hall, and summon the fire company. Defendant, however, through its gross and willful negligence, wholly failed to respond to said call, or to give any evidence that any operator was at the exchange, and though the night watchman continued for a considerable time to ring the bell and try to arouse the operator, he could not induce any response whatever. The said night watchman, after spending considerable time in the vain and useless effort to arouse defendant's operator at the exchange, then tried, by shooting his pistol several times, and in other ways, to arouse other persons so that there might be assistance in arousing the fire company, and at about 10 minutes before 3 o'clock, after the fire had communicated to the main building, and with the inflammable material therein contained, the fire bell was rung. The fire company, within a few minutes thereafter, reached the scene of the fire, but too late to save any portion of the plant or outfit save the warehouse and contents on the south side of the main building.

Plaintiff says that, but for the gross and willful negligence of defendant in failing and refusing to respond to the call by plaintiff's watchman, and in failing and refusing to connect plaintiff's office telephone with that in the city hall, the fire alarm would have been given, the fire bell promptly rung, the fire company would have reached the fire at least one-half hour before it did reach it, and before the fire had extended beyond the boiler house, and the fire would in such event have been easily put out with no loss to plaintiff, save a very trifling amount of

damage to the boiler house.  Plaintiff says that from
the ringing of the fire bell to the arrival of the fire
company at the plant, with reel, hose, and all equip-
ments for fighting fire, much less time elapsed than
had elapsed between the efforts of plaintiff's watch-
man to arouse defendant's operator and the spread
of the fire beyond the boiler house, and, if reasonably
prompt connection had been given the fire company
would certainly have been on the ground ready to
control the fire and extinguish it while yet confined
to the boiler house.  When the said company did ar-
rive, however, the unreasonable delay had been such,
on account of defendant's negligence, that the main
building had caught fire, and a large amount of ma-
terial, finished and unfinished, therein contained, was
so dry and inflammable that it was impossible for the
fire company, with all the means at its command, to
arrest the conflagration, and the necessary and inevit-
able result was that plaintiff's main building, with its
contents, the dryhouse or kiln, with its contents, the
sawmill building, and the warehouse north of the
main building, together with a large amount of costly
and valuable machinery, and much valuable material,
finished and in process of manufacture, were totally
destroyed; the value of such destroyed property, out-
side of the boiler house, being not less than $22,000,
none of which would have been injured but for the
negligence of defendants, as hereinbefore set out.

The petition does not charge that defendants were
under any contract with the city of Lebanon to main-
tain a fire alarm system in the city, and hence their
liability must be determined under the general con-
tract with their patrons.  They agree to furnish con-
nection between the patrons, upon request and subject
to such reasonable rules as might properly be adopted

and enforced in a town of the size of Lebanon. Plaintiff, evidently knowing that there was no contract obligation on the part of the defendant companies which made them liable as though operating a fire alarm system, and, no doubt, realizing that the contract which it did have could hardly be construed so as to charge that the liability sought to be imposed was within the reasonable contemplation of the contracting parties, has sued in tort. The primary question to be determined is: Was the failure of the operator, at the central office of defendant companies, to furnish promptly the connection between plaintiff's watchman and the fire engine house, the proximate cause of the loss? If it was, the petition states a cause of action; otherwise, not. The mere facts that the defendant company's operator was negligent in the discharge of her duty, and, for the purposes of the demurrer it is admitted that she was, and plaintiff suffered a loss, are not sufficient to create a liability; but there must, to negligence and loss, be added a state of facts showing that the negligent act was the proximate cause of the loss. The negligence and loss being admitted, do the facts stated as to how the loss was brought about show that but, for the negligence, it would not have occurred? The defendant companies are not charged with having started the fire, or with having anything to do with its origin, nor are they asked to respond in damages for the loss of the boiler house; but the charge against them is that they are responsible for the spread of the fire to the main building, because they failed to promptly furnish connection with the city fire department. This is the gravamen of defendants' offense.

An analysis of the petition shows that it charges: That, if connection had been promptly established

between the watchman and the fire department, the man in charge there would have promptly answered his call, and would have promptly sounded the alarm by ringing the fire bell; that the members of the fire department would have heard the fire bell, when rung, and would have promptly answered the call, and would have reached the fire at least 30 minutes sooner than they did, and before it had spread from the boiler house to the main buildings; that, after having reached the fire, the fire department would have put it out before it had communicated to the main buildings, and the plaintiff would have suffered comparatively no loss. Each of these five independent links must be forged into a chain in order to connect the negligence of the defendant's operator with plaintiff's loss. It must be presumed: That the watchman in the engine house was awake and at his post of duty ready to answer the call immediately upon receipt of the notice of the fire; that he would at once have sounded the alarm by ringing the bell; that upon the ringing of the bell members of the fire department, whether paid or volunteers, would have heard the alarm and promptly responded to the call, and would have reached the scene of the fire before it had spread to the main building. The fire fighting apparatus must have been in perfect working order, and the fire department must have succeeded in confining the fire to the boiler room, and put it out before it had spread to the other buildings. Now, when it is considered that each of these separate agencies is wholly independent of the other, and none of them under the direction or subject to the control of the defendants, it is readily seen that, in order to hold that the negligence complained of was the proximate cause of the injury or loss, a series of presumptions

must be indulged in. Just how far the fire had
progressed when first discovered is not shown, but it
may be fairly presumed that it had made such head-
way as to be beyond the control of the watchman.
It was past 2 o'clock in the night—a time when most
of the inhabitants of the town were probably asleep.
As to the extent to which the fire would have spread
before the fire department reached there if it had
been promptly notified is a matter of pure conjecture,
and the same may be said as to whether or not the
fire department would have been able to subdue the
flames and prevent the spread of the fire to the main
buildings, if they had been promptly called. We
know that fire fighting, under the most favorable cir-
cumstances, and with the most approved appliances
and modern machinery, is an uncertain and frequent-
ly disastrous business. No two fires are alike, and it
is indulging in the purest speculation to try to figure
what would have been done under other conditions
and different circumstances. Had the fire depart-
ment been notified and arrived promptly, they might
have reached the fire while it was still confined to the
boiler house, and they might not; so they might have
succeeded in confining it to that building and pre-
vented its spread, and again they might not. The
rapidity with which a fire may spread is controlled
by no fixed law, but depends in a large measure upon
circumstances—the time of year, the material used
in the building, and its contents, the force of the wind,
and many other items, have to be reckoned with. In
the case at bar, as appears from the petition, every
element that would be calculated to hasten the spread
of the fire was present.

If everything had worked out as plaintiff figures it
should and would, had there been no delay in effecting

the connection, the most that can be said is that the main buildings could probably have been saved. This is not sufficient. Plaintiff, in order to hold defendants liable, must show more than a possible responsibility, or even a probable responsibility. It must show that but for the negligence the loss would not have occurred, and the facts necessary to establish this connection between negligence and loss must not rest upon uncertain or indeterminate premises. If the inference that the acts complained of are the proximate cause of the loss is to be reliable, the premises from which it is drawn must be fixed and certain. The loss in this case was due to the fire. This was the primary cause, and, in order to make the negligence of defendants intervene and become the efficient cause, it must be established with certainty that but for their negligence the fire would have been confined to the boiler room. Now, does the petition state such facts as warrant the inference that but for the negligence complained of the fire would not have spread? We think not. The petition proceeds upon the hypothesis that all of the independent intervening agencies would have worked together harmoniously, promptly and efficiently. This is a mere conclusion of the pleader. If the agent of defendant companies had acted promptly, the watchman in the fire tower would have likewise done so, and so on down through the list of the different agencies called into play. Theoretically this is all right, but, as a legal proposition, it is unsound.

Questions similar to these have heretofore been before us. In the case of Smith v. Western Union Telegraph Company, 83 Ky. 104, 4 Am. St. Rep. 126, 7 Ky. Law Rep. 22, a recovery was sought against the telegraph company for failing to deliver a message.

The court found that it was not conclusively shown that the loss was the direct result of the telegraph company's failure to deliver the message, and a recovery was denied. In Louisville Gas Company v. Kaufman, 105 Ky. 131, 48 S. W. 434, 20 Ky. Law Rep. 1069, the court said, that where it is a question of negligence or no negligence, and the evidence is equally consistent with either view, the case should not go to the jury. And in the case of Franke v. Head, 42 S. W. 913, 19 Ky. Law Rep. 1128, we have almost the identical point decided that is raised in the case at bar. In that case Franke owned a tobacco warehouse at Sebree, Ky., which he leased to appellees. While so leased it was destroyed by fire, and Franke sued appellees to recover its value, fixed at $14,000. He alleged, that when appellees took possession of the warehouse it was equipped with steam force pumps and water pipes leading throughout the building, which supplied the building with an adequate supply of water at all times, so that when fire started therein it could be promptly extinguished; that this fire fighting apparatus was in good repair and working order, when appellees took possession of the building; that they carelessly and negligently permitted the engine and pipes to become and remain out of repair, so that when the fire occurred they had no adequate means of extinguishing same, in consequence of which the building burned; that by reason of this negligence on their part the loss complained of was sustained. Issue was joined on these allegations of negligence, trial had, and a peremptory instruction given. Upon reviewing the case here, this court said: "The question in this case is: Can the appellant recover upon the facts stated in his petition as amended; the proof intro-

duced by him tending to establish the truth of such
facts alleged as to the removal of the pipes and their
condition before removal?  No other act of negligence
is in any way shown save that of removing the pipes
that had been put there to extinguish fire, and this
act of removing the pipes occurred sometime before
the fire.  The proof introduced shows that the fire
was purely accidental, and occurred through no fault
of appellees, and that after it was discovered appel-
lees and their servants did all they could to extinguish
it, but failed.  It is not claimed that the removal of
the pipes in any way caused the building to take fire,
nor is it contended that the removal of the pipes can
in any way be traced as the cause of the fire; but the
only contention of appellant is that, if these
pipes had been permitted to remain and been
kept in good repair, this fire, purely accidental
in itself, could have been extinguished with practically
no damage to the building.  It seems to us that to
make the appellees liable for the destruction of this
building there must be some proof that the act of dis-
connecting and removing the pipes was the cause of
the destruction of the building, and as this removal
had been done some time and no fire had happened,
and the absence of proof that if the pipes had been in
perfect working order the engine and pumps would
have worked, and that some person would have steam
up and applied it, and that, all that having been done,
it would of necessity have saved the building, is en-
tirely too problematical and speculative to permit a
recovery.  The acts of negligence complained of are
too remote.  The fire did not follow as a reasonable
consequence of the removal of the pipes, and it can
not therefore be said that, as the fire in its origin
was accidental, it was the result of appellee's negli-

gence, and, in our opinion, no recovery could be had."

The acts of negligence in this case from which we have quoted are pleaded just as in the case at bar, and they were all sustained by the proof; but the court said they were too speculative and remote to support a cause of action. In that case the charge of negligence was the removal of the means for extinguishing the fire. In the present case it is the act which delayed the arrival of the means to extinguish the fire. In Hazel v. City of Owensboro, 99 S. W. 315, 9 L. R. A. (N. S.) 235, 30 Ky. Law Rep. 627, plaintiff's house was destroyed by fire of unknown origin. The street in front of the property was so torn up and out of repair that the fire engine could not reach the fire in time to save the building. Suit was brought against the city for damages. The ground relied upon, as in the case at bar, was that by the city's negligence the fire engine was delayed in reaching the fire until too late to save the building. Suit was brought against the city for damages. The ground relied upon, as in the case at bar, was that by the city's negligence the fire engine was delayed in reaching the fire until too late to save the building. The court, in denying the plaintiff a right to recover, said: "Her loss directly resulted from the fire. The negligent condition of the street had nothing to do with the origin of the fire, so that the question is: Could or would the fire have been extinguished if the street had been in good condition for public travel; or, to put it in another way, was the destruction of her house caused by the negligent condition of the street? This is altogether problematical. Certain it is that the city was in no wise responsible for the fire, and in this particular it committed no breach of duty. Nor can it be said that it could reasonably be antici-

pated by the city that any loss by fire would result from the condition of the street. This being true, it is difficult to perceive upon what ground the city can be asked to respond in damages because its street was out of repair. The connection between the condition of the street and the fire is too remote. In fact, there is none." In line with these authorities are the cases of Bosworth v. Brand, 1 Dana 377; Patch v. Covington, 17 B. Monroe 722, 66 Am. Dec. 186, 45 S. W. 515, 42 L. R. A. 302, and Smitha v. Gentry, 20 Ky. Law Rep. 171, 45 S. W. 515. All of these cases are bottomed upon the well-established rule that before one can be held chargeable for a negligent act it must appear that the loss or injury is the proximate result of such act. This is a well-established rule about which there is no contrariety of opinion. The difficulty arises in its application. It is not always an easy matter to determine whether from the facts stated the negligence is the proximate cause of the loss, and for this reason each case must in general be determined by the facts presented, and not infrequently they are such as to render the line of demarkation between proximate and remote cause so indistinct as to be almost indiscernible.

Many cases are cited by appellee, and we have examined them. Some are based upon a state of facts that render them inapplicable, while others are of a class where their liability is fixed by special contract, and a recovery is allowed because of the breach thereof, as in Shelbyville Water & Light Company v. McDade, 122 Ky. 639, 92 S. W. 568, 29 Ky. Law Rep. 119, and similar cases. In the cases of Metallic Compression Casting Company v. Pittsburg, etc., Railway Company, 109 Mass. 277, 12 Am. Rep. 689, and Little Rock Traction Company v. McCaskill, 75 Ark. 133,

86 S. W. 997, 70 L. R. A. 680, 112 Am. St. Rep. 48, the facts are much the same. A house was on fire, and a fire engine was throwing water from a hose pipe onto the fire. In making its connection with the water plug, the hose was in each case, drawn across the tracks of the defendant company, and its servants and agents, with a full knowledge that the water being furnished by the hose was being played upon the fire, negligently ran an engine over the hose, severing it, and thereby wholly disabling the fire company and preventing any further efforts on its part to check or extinguish the flames. They had as effectually, in each case, prevented the extinguishing of the flames as though their employes had gone to the scene of the fire and, with arms, driven those who were attempting to extinguish the fire from the building. In line with these cases are the cases of Mott v. Hudson River Railway Company, 1 Rob. (N. Y.) 585, and Kiernan v. Metropolitan Construction Company, 170 Mass. 378, 49 N. E. 648. The negligence charged in these cases presents an entirely different state of facts from that in the case under consideration. In each of these cases the defendant was guilty, not of acts of omission, but of positive, willful, wrongful acts, for which they were properly held liable, on the ground that their acts were the proximate cause of the continuation of the fire, and but for which the fire would have been extinguished. These were all extreme cases, and, as the opinions clearly indicate, the liability of the defendants was fixed by their wanton, willful and reckless acts. They are so unlike the case at bar that the principles applied therein have no application here.

The facts upon which a recovery is sought in the present case are entirely too speculative and remote

to support a cause of action, and the judgment is therefore reversed, with instructions to the trial judge to dismiss the petition.