SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. THOMAS.    (No. 5631.)

(Court of Civil Appeals of Texas. San Antonio. March 15, 1916. Rehearing Denied April 26, 1916.)

TELEGRAPHS AND TELEPHONES ☞66(4)—ACTION FOR NEGLIGENCE—PROXIMATE CAUSE.

A complaint alleged that plaintiff was a subscriber to defendant's telephone system; that defendant agreed to furnish him telephone communication, especially to the fire station and the residence of the fire chief; that after plaintiff's residence was discovered to be on fire and beyond plaintiff's control, he was unable to get a response to his telephone call for about 15 minutes; and that a neighbor tried to get the

central office, but could not, whereby the fire department was delayed 20 or 30 minutes, in consequence of which the residence was partly destroyed, to plaintiff's damage. The evidence tended to show that the delay might have been caused by the failure of the alarm bell at the fire station to work, and also that the water pressure was weak and the hose defective. *Held*, insufficient to show that the negligence of the defendant was the "proximate cause" of the loss.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 63; Dec. Dig. ☞ 66(4).]

Appeal from Guadalupe County Court; J. B. Williams, Judge.

Action by W. C. Thomas against the Southwestern Telegraph & Telephone Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered that plaintiff take nothing.

A. P. Wozencraft, S. P. English, F. W. Wozencraft, and J. D. Frank, all of Dallas, for appellant. Greenwood & Short, of Seguin, for appellee.

CARL, J. Appellee sued the Southwestern Telegraph & Telephone Company for damages, and alleged substantially that the telephone company owned and operated a telephone system in the city of Seguin, under a franchise from the city, and maintained a central office or exchange, where connections were made with its various telephones; that appellee was a regular subscriber, or patron, and had a telephone in his residence, for which he paid appellant $1.50 per month as rent, and for this consideration "defendant agreed to furnish to the plaintiff at all times telephonic communication over the telephone in plaintiff's house with all other telephones in said city of Seguin operated by the defendant, and especially the ones at the fire station and at the place where the fire chief lived, as well as the long-distance services to other places outside of Seguin"; that about 2:30 in the morning the plaintiff's private residence was discovered to be on fire, and the fire had gotten under considerable headway when discovered, and it was impossible for plaintiff and his family to extinguish the same; that he went to the telephone in his residence and rang the phone bell five or six times, trying to get in communication with the central office, but failed to get a response, and then his daughter made several attempts to get a response from "Central," but failed to do so until she had spent about 15 minutes; that H. E. Short, another subscriber, saw the fire consuming plaintiff's residence, and he tried to get the central office, but likewise failed. It is alleged that a volunteer fire department is maintained in Seguin, and George J. Kempen is the chief, who was to be notified by the company in case of fire, and if the central office had responded to the calls of plaintiff and his daughter or of H. E. Short, who was acting for plaintiff, at the time the fire was discovered, the members of the fire department would have been notified, and would have responded, together with friends and neighbors, who would also have been notified, and the two-story part of his house would have been saved. The house was composed of a one-story part where there was a store room, kitchen, and dining room, and a six-room two-story part of the residence adjoined the three one-story rooms where the fire originated. It is contended that the two-story part would have been saved if the plaintiff had been able to get central, and thereby have notified the fire department, but on account of the delay 30 minutes were lost, during which time the fire reached the two-story part of the house and got beyond control; that if the calls had been put through promptly, the fire department would have arrived 20 or 30 minutes earlier than it did, and would have saved the two-story part, but on account of the delay, the fire had reached the two-story part, and the water pressure was not strong enough to throw water on this part of the house, but was strong enough to reach the one-story part. The value of the two-story part, for which the suit was brought, is laid at $995. The petition alleges that the company ought to keep its lines in such condition that when a residence phone rings, a large alarm bell would ring at the central station or exchange, and given an alarm so as to awake the night operator, and the company was negligent in not so providing alarm bells. On answers to special issues judgment was entered in favor of appellee for $475, from which this appeal is prosecuted.

We will not state in detail the matters of defense pleaded, since all that will be necessary will appear in the following discussion: The judgment in this cause cannot stand because it is based upon speculation and acts of negligence too remote. In other words, the negligence of the appellant is not shown to have been the proximate cause of the injury. The whole case is predicated upon the theory that if the call had been answered promptly by the exchange operator, the fire would have been extinguished before it reached the two-story part. This presupposes that the fire department would have responded promptly, and there would have been no other mishap of any kind; that the water pressure would have been ample, and the fire apparatus in good working order, no adverse winds, etc. Appellee says he relied on the telephone company to get in communication with the fire station. He says he had a contract with the telephone company to furnish him telephonic communication with the other phones, including the fire chief's. This seems to have been the ordinary subscriber's contract. Kempen, the fire chief, testified as to the equipment for fire fighting, etc. There is testimony which indicates that the delay may have been caused by the failure of the alarm bell at the fire station to work.

This was installed and maintained by the city of Seguin. The fireman who slept there could not hear an ordinary telephone bell from where he slept, but could hear the large bell. If it failed to work, he would not awaken. Some testimony indicates that the water pressure was weak, and that the fire could not be put out on that account; but one witness thought it was on account of defective hose; same having holes or leaks so as to lower the pressure. But whether it was for want of a proper alarm bell at the fire station that the house was lost, or defective hose or low-water pressure, the appellant would be responsible in neither event. In order to hold the failure of central to take and transmit the call to be the proximate cause of the loss, we must indulge the presumption that everything else would have turned out to perfection; that the fire station bell would have worked, and the fireman would have been awakened; that the department would have been called and would have responded promptly; that the apparatus would have been in good working order, and that nothing would have occurred to prevent the prompt arrival of the firemen; and then, after they had gotten to the fire, everything else necessary to be done in order successfully to combat the fire would have taken place. It presupposes that the water pressure would have been sufficient, and that the leaky hose would have been sufficient. No adverse wind would have sprung up. In fact, it must be presumed that everything except this failure of the sleeping girl to answer would have moved with clocklike precision. And after all this, how much of the building would have been saved? What man can say? Indulging all these suppositions, at last we wind up in mere conjecture as to what damage would have been done. To say that the damage is remote and speculative to a high degree, is stating it mildly. In Lebanon, Louisville & Lexington Telephone Co. et al. v. Lanham Lumber Co., 131 Ky. 718, 115 S. W. 824–828, 21 L. R. A. (N. S.) 115, 18 Ann. Cas. 1066, discussing a similar case, it was said:

"The petition does not charge that defendants were under any contract with the city of Lebanon to maintain a fire alarm system in the city, and hence their liability must be determined under their general contract with their patrons. They agree to furnish connection between the patrons, upon request and subject to such reasonable rules as might properly be adopted and enforced in a town the size of Lebanon. Plaintiff, evidently knowing that there was no contract obligation on the part of the defendant companies, which made them liable as though operating a fire alarm system, and, no doubt, realizing that the contract which it did have could hardly be construed so as to charge that the liability sought to be imposed was within the reasonable contemplation of the contracting parties, has sued in tort. The primary question to be determined is: Was the failure of the operator, at the central office of the defendant companies, to furnish promptly the connection between plaintiff's watchman and the fire engine house the proximate cause of the

loss? If it was, the petition states a cause of action; otherwise, not. The mere facts that the defendant company's operator was negligent in the discharge of her duty—and, for the purposes of the demurrer it is admitted that she was—and plaintiff suffered a loss are not sufficient to create a liability; but there must to negligence and loss be added a state of facts showing that the negligent act was the proximate cause of the loss. The negligence and loss being admitted, do the facts stated as to how the loss was brought about show that but for the negligence it would not have occurred? The defendant companies are not charged with having started the fire, or with having anything to do with its origin, nor are they asked to respond in damages for the loss of the boiler house; but the charge against them is that they are responsible for the spread of the fire to the main building, because they failed to promptly furnish connection with the city fire department. This is the gravamen of defendant's offense.

"An analysis of the petition shows that it charges that, if connection had been promptly established between the watchman and the fire department, the man in charge there would have promptly answered his call, and would have promptly sounded the alarm by ringing the fire bell; that the members of the fire department would have heard the fire bell, when rung, and would have promptly answered the call, and would have reached the fire at least 30 minutes sooner than they did, and before it had spread from the boiler house to the main building; that, after having reached the fire, the fire department would have put it out before it had communicated to the main buildings, and the plaintiff would have suffered comparatively no loss. Each of these five independent links must be forged into a chain in order to connect the negligence of the defendant's operator with plaintiff's loss. It must be presumed that the watchman in the engine house was awake and at his post of duty, ready to answer the call immediately upon receipt of the notice of the fire; that he would at once have sounded the alarm by ringing the bell; that upon the ringing of the bell the members of the fire department, whether paid or volunteers, would have heard the alarm and promptly responded to the call, and would have reached the scene of the fire before it had spread to the main buildings. The fire-fighting apparatus must have been in perfect working order, and the fire department must have succeeded in confining the fire to the boiler house, and put it out before it had spread to the other buildings. Now, when it is considered that each of these separate agencies is wholly independent of the other, and none of them under the direction or subject to the control of the defendants, it is readily seen that, in order to hold that the negligence complained of was the proximate cause of the injury or loss, a series of presumptions must be indulged in. Just how far the fire had progressed when first discovered is not shown, but it may be fairly presumed that it had made such headway as to be beyond the control of the watchman. It was past 2 o'clock in the night—a time when most of the inhabitants of the town were probably asleep. As to the extent to which the fire would have spread before the fire department reached there, if it had been promptly notified, is a matter of pure conjecture, and the same may be said as to whether or not the fire department would have been able to subdue the flames and prevent the spread of the fire to the main buildings if they had been promptly called. We know that fire fighting, under the most favorable circumstances, and with the most approved appliances and modern machinery, is an uncertain and frequently disastrous business. No two fires are alike, and it is indulging in the purest speculation to try to figure what could have been done under other conditions and dif-

ferent circumstances. Had the fire department been notified and arrived promptly, they might have reached the fire while it was still confined, to the boiler house, and they might not, so they might have succeeded in confining it to that building and prevented its spread, and again they might not. * * *

"If everything had worked out as plaintiff figures it should and would, had there been no delay in effecting the connection, the most that can be said is that the main buildings could probably have been saved. This is not sufficient. Plaintiff, in order to hold defendants liable, must show more than a possible responsibility, or even a probable responsibility. It must show that but for the negligence the loss would not have occurred, and the facts necessary to establish this connection between negligence and loss must not rest upon uncertain or indeterminate premises. If the inference that the acts complained of are the proximate cause of the loss is to be reliable, the premises from which it is drawn must be fixed and certain. The loss in this case was due to the fire. This was the primary cause, and, in order to make the negligence of defendants intervene and become the efficient cause, it must be established with certainty that but for their negligence the fire would have been confined to the boiler room. Now, does the petition state such facts as warrant the inference that but for the negligence complained of the fire would not have spread? We think not. The petition proceeds upon the hypothesis that all of the independent intervening agencies would have worked together harmoniously, promptly, and efficiently. This is a mere conclusion of the pleader. If the agent of defendant companies had acted promptly, the watchman in the fire tower would have likewise done so, and so on down through the list of the different agencies called into play. Theoretically this is all right, but, as a legal proposition, it is unsound."

Practically to the same effect is the case of Volquardsen v. Iowa Telephone Co., 148 Iowa, 77, 126 N. W. 930, 28 L. R. A. (N. S.) 554, and the same court later, in the case of Providence Washington Ins. Co. v. Iowa Telephone Co. (Iowa) 154 N. W. 876. In the Volquardsen Case, supra, the court said:

"The fire was the primary cause of the loss. The defendant did not start it, or have aught to do with its origin. The charge against it is that the negligence intervened as the efficient cause in the omission to do that which would have resulted in the extinction of the fire. Of course, if the failure to put out the fire was the direct and natural consequence of the unreasonable delay in making the connection, then there could be no doubt as to defendant's liability. But several links in the chain of sequences are involved in doubt and speculation. The fire was burning, not only before plaintiff reached the receiver, but before he was awakened by his wife, who had heard the crackling of flames. Conceding that he was at the telephone 9 or 10 minutes, though minutes seem hours at such times, and that connection was made at the central office within two minutes thereafter, yet, as the hose company had been notified by another, there could not have been a delay of over more than 10 or 12 minutes, and, when the firemen arrived, the fire was beyond control. At what time must they have been on the ground to have saved the property? No one can answer save from conjecture. All realize that in such emergencies time is precious, but who can say from the situation as presented in this case how many minutes meant the loss of the plaintiff's property? Suppose the connection at the central office had been made promptly, would the fireman in charge of the fire station have responded promptly, and promptly have rung the fire bell? Would the members of the department have heard and promptly have repaired to the scene? Was the apparatus for extinguishing the fire in working order and the water supply accessible and sufficient? Would all of these intervening agencies have operated harmoniously and efficiently and with such promptness as to have put out the flames in time to have avoided a total loss? Manifestly these are matters of speculation, and yet all this must be assumed if the loss is to be traced to defendant's negligence. Each of these independent agencies necessarily must be linked together in a line of causation in order to connect it with the loss. None of them were under the direction or control of the telephone company. Moreover, how far the fire had spread at the time the firemen would have been likely to have reached the scene had the connection been promptly made is left by the evidence a matter of speculation merely. And then there are the weather conditions and the character of the material to be taken into account. After the experience of ages, fighting fire, even with modern machinery and apparatus, is precarious business, and uncertain in its results. Had everything worked out as calculated, after the fire was over probably some of the building and machinery might have been saved. But the basis for a legal inference of this kind was not furnished by the evidence. The negligence of the telephone company may be ascertained, but that falls short of connecting it with the loss, which is only possible through agencies entirely independent. If it, as the dominating force, acted through the intervening agencies, as mere instruments or vehicles in a natural line of causation, to the loss, there would be ground for saying defendant was liable. But the intervening agencies were independent, and what might have happened pure matter of speculation."

See, also, Feille v. San Antonio Traction Co., 48 Tex. Civ. App. 541, 107 S. W. 368, 13 Cyc. pp. 25, 26 & 27.

The judgment is reversed, and judgment is here rendered that appellee take nothing.