S. S. AMERSON and Emma Amerson, his Wife, Appellants,

v.

SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellee.

Court of Appeals of Kentucky.

June 14, 1957.

E. Durward Weldon, Georgetown, for appellants.

Bradley & Bradley, V. A. Bradley, Jr., Georgetown, Stites, Wood, Helm & Peabody, Louisville, for appellee.

STEWART, Judge.

Appellants, S. S. Amerson and Emma Amerson, his wife, sought damages for $10,000, less $2,965 collected by way of insurance, from appellee, Southern Bell Telephone and Telegraph Company. They alleged their barn and its contents burned down because of appellee's negligence in failing to put through to the fire department a telephone call.

On the night of July 18, 1954, the barn caught fire after being struck by lightning. Emma Amerson, who was in bed at the time, was awakened by a loud thunder clap. She arose looked out the window, saw the fire, went to the telephone and called her son Edward, who lived in Georgetown and who operated the farm for appellants. Then Edward, his wife and his mother attempted, without success, to get in touch with the fire department. The only response from the telephone company the Amersons ever got was after about ten minutes when the operater answered and Emma Anderson said, "I want you to get the Scott County Fire Department. A barn is on fire on Dr. Amerson's farm on the Lemon's Mill Road." According to her, the operator replied, "All right". However, the latter failed to make the connection. The operator testified Emma Amerson "hung up" on her. Emma Amerson denied this and her daughter corroborated her.

Richard H. Wall, the chief of the fire department, stated the phone at the station did not ring, which would indicate the operater did not contact the fire department. Finally, Willie Amerson, the daughter of appellants, got in her car and drove to the fire station. As she pulled up, the fire truck was just leaving. The fire chief had seen a glow in the sky and had called the telephone company to see if a fire had been reported. Being unable to obtain any information from the operator, he started calling people in the neighborhood of the fire's location and then saw Willie Amerson who told him the whereabouts of the fire. By the time the fire truck got to the fire it was too late to save the barn.

Most of the testimony in the record was to the effect that the fire truck got to the fire some thirty minutes after it was discovered, twenty-five minutes later than it would have, it is claimed, if the call had gone straight through. The barn was situated three miles from the fire station. One important witness for appellants was Edward Amerson, appellants' son. When he received notice of the fire at his home in Georgetown from his mother, he tried to reach the fire department for several minutes but failed to obtain any response, so he dressed and drove out to the farm. In his opinion this took around fifteen minutes. By the time he reached the farm, according to his testimony, the fire was not too large. He described it as being "four feet wide and around four or five feet tall" on the wall of the barn.

The fire department chief, Richard W. Wall, also testified for appellants. He stated he was in constant readiness at all times during that night to answer a fire call, that his equipment was in "A-1 shape", and that he could, and did, drive the three miles to the Amerson place in about five minutes. After a lengthy argument, he was asked as an expert witness whether he thought he could have put out a fire of the type described by Edward Amerson. He said he thought he could have done so. Appellee vigorously contends that this interrogation was improper, first, because it did not embrace all the pertinent factors involved in the situation, and, second, because the question asked is not one that admits of an "expert answer". This witness also testified, over objection, that he could have extinguished the fire with only a "little bit more" damage to the barn. Our decision of this appeal will not require us to go into these evidentiary issues.

The testimony for appellee is not too important for the purposes of this appeal. Most of it went to show there was no negligence on its part. Now, on appeal it vir-

tually concedes it may have been guilty of some negligence but it argues that such negligence was not the proximate cause of the loss sued on.

At the conclusion of the evidence appellee moved for a peremptory instruction. The trial judge denied this motion, although he indicated he would grant judgment n. o. v., if the jury rendered a verdict for appellants. The jury found for appellants in the amount of $3,500. Appellee then moved for judgment n. o. v., and the trial judge sustained the motion and dismissed the complaint. This appeal challenges the correctness of the ruling of the lower court.

The principal inquiry before us is whether the negligence of the telephone company was the proximate cause of appellants' loss. The leading case on this question in this state, and indeed one of the leading cases in the whole country, is Lebanon, Louisville and Lexington Tel. Co. v. Lanham Lumber Co., 131 Ky. 718, 115 S.W. 824, 826, 21 L.R.A., N.S., 115. In our opinion, this case controls the disposition of this appeal.

In that case, appellee, Lanham Lumber Co., filed suit for damages for the destruction of its lumber plant by fire. The petition alleged that the telephone company had negligently delayed in putting the night watchman's call through to the fire station, thus preventing the fire company from promptly arriving at the scene and extinguishing the fire before it spread from the boiler house to the rest of the lumberyard. The lower court entered judgment on a jury verdict awarding damages of $10,000. This Court held, in reversing, that the petition failed to state a claim and that the demurrer to it should have been sustained, since the facts on which a recovery was sought were too speculative and too remote.

Appellants and appellee differ in their interpretation of this case. Appellee maintains that the case states, as a rule of law, that a telephone company is not liable in this type of action, because it is purely "speculative" or "conjectural" that the negligence of the company was the proximate cause of the loss. Appellants, on the other hand, argue that the case holds that the *facts in that cause of action* were not sufficient to show the direct causation between the telephone company's negligence and the lumber company's loss.

We deem it unnecessary to construe the Lanham opinion with the view of determining whether appellee's or appellants' interpretation of that case should be upheld. We are faced in the instant action with the immediate inquiry as to whether the proof adequately showed that the fire could have been extinguished, even if the fire truck had arrived at the scene in the quickest possible time. This same question was posed in the Lanham case and decided adversely to the lumber company. Under the evidence developed here, we believe it would be impossible to establish that "but for" the negligence of appellee the injury to appellants would not have occurred.

It was pointed out in the Lanham case that, although the telephone company had placed the call, it would still have to be assumed that the watchman at the fire station was awake, that he would have sounded the alarm, that the other firemen would have heard it, that they would have responded, that they would have reached the scene of the fire without mishap, and that they would have been able to put it out. Forces that would come into play other than the fallible human factors mentioned must also be taken into account. After pointing out that no two fires are alike, the Lanham case made this pertinent observation on the nature of fires. It said: "The rapidity with which a fire may spread is controlled by no fixed law, but depends in a large measure upon circumstances. The time of year, the material used in the building, its contents, the force of the wind, and many other items, have to be reckoned with."

The proof of causation in this case, as in the Lanham case, was lacking, because of the many and varied intervening agencies

that could have combined to consummate appellants' loss. The independent links that must be forged into a chain in order to connect the negligence of appellee's operator with appellants' loss were not established. More than that, the question of the assessment of damages occasioned by the fire was also so speculative in its nature that no jury could accurately estimate the proportion of loss caused by the telephone company's negligence in failing to promptly furnish service with the fire department.

Wherefore, the judgment is affirmed.